RAFAEL SAURI, Plaintiff and Appellant, v. JOSÉ SAURI ET AL., Defendants and Appellants.

No. 3549. Argued January 15, 1929.—Decided April 30, 1929.

*Tous Soto & Pérez Marchand* for the plaintiff-appellant. *F. Parra Capó* and *José* and *Alberto Poventud* for the defendant-appellants.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

Rafael Sauri brought an action in the District Court of Ponce against José Sauri, Carmen Sauri and Isabel Tristani de Sauri. It was alleged in the complaint that the plaintiff and the defendants, as heirs of Félix Sauri y Vivas, executed a public deed by which they divided among themselves the estate of the said Félix Sauri, allotting a joint interest of one-half to Isabel Tristani and a joint interest of one-third of the other half to each of the other heirs, Rafael, José and Carmen Sauri. A description is given of the properties consisting of several houses and lots, rural properties and shares of stock in the Santa Isabel Sugar Company, Crédito y Ahorro Ponceño and Banco Comercial. It is alleged that by the same deed the plaintiff and the defendants formed a partnership of common ownership as appears from clause 17 of the deed and that the partnership was established for an indefinite period to terminate at the will of any one of its members; that the joint owners José and Carmen Sauri have given notice to the plaintiff that they desire to withdraw from the partnership; that the properties are susceptible of easy division, except the urban properties, which are not divisible; that during the management of the partnership by the plaintiff it acquired 82 oxen, 55 shares of stock of the Crédito y Ahorro Ponceño, 20 shares of stock of Santa Isabel, a pump of the value of $15,907.17, and other properties; that the joint owners have been unable to agree on a division of the common property. On this cause of action the plaintiff prayed for a division of the rural properties in parts corresponding to the joint interests; that the urban properties be

sold at public auction and the proceeds be distributed; that the cattle and chattels be divided equally; that for the division of the rural properties three referees be appointed to make the division and present a report to the court for its approval, and that he be allowed the costs.

The complaint set up another cause of action which we need not consider because the appeal referring to it has been decided. (38 P.R.R. 686.)

The defendants demurred, the demurrer was overruled and they answered the complaint in substance as follows: They admit the existence of the partnership and of the properties, but add that on the San Antonio or Cuatro Calles property there is a pump with ten wells at regular distance which permit irrigation and cultivation of sugar cane on the property; that there is also a railroad siding, a crane for loading cane, dwelling houses and an overseer's house; that one of the properties was before its acquisition composed of three others, to wit: the Constancia with exclusive water right, pump, warehouse, dwellings for laborers, another for an overseer, sheds and a blacksmith shop, and the Parnaso and Playa also with water rights and a pump; that for irrigation purposes those properties continue separate; that the rural properties described in the complaint have been used always by the parties to the suit for planting sugar cane on the parts suitable for that purpose and leaving the remainder for pasture, using the implements as if it were a single plantation and under a contract for cultivating and grinding cane with the corporation Sauri & Subirá; that they admit the divisibility of the cattle and shares of stock and deny that of the remaining property in its essence because it can not be divided easily; and as to the rural properties especially because they would have to be divided, not into four parts, but into many more owing to the distinction between the cane lands and pasture lands, which would decrease the value of the property, and as to the properties in the San Antón section, because they take water from the

pump and the ten wells and as the pump can not be divided, the division of the lands would force some of the joint owners to abandon the raising of cane or make heavy disbursements, and the pump and the wells would remain undivided, as well as the houses, the siding and the derrick, and because the property No. 8 is divided for irrigation purposes into three others having each a separate water right from three different rivers, and it would be necessary to divide the rights, the principal water ways remaining always undivided together with the intake and the pump, and that working the properties as a single unit they are provided with the necessary material and implements which are mostly indivisible, and that the division among four persons would compel them to acquire more material at great expense and also because the division would cause the establishment of distinct servitudes; because the properties are subject to a single contract for the raising and grinding of cane, and because the division would greatly decrease the value of the properties. They admitted the acquisition of personal property during the common partnership among which was the pump which they alleged to be indivisible, and the same as to the pumps, sidings, water-ways, dwellings and machinery. They admitted that they had not come to an agreement as regards the dissolution of the common partnership in the rural properties and their appurtenances, but not so as to the urban properties and the marketable securities. And they prayed that the stock be distributed proportionally; that the cattle and chattels be divided proportionally, and that the remaining property be sold publicly to the highest bidder.

After trial the court rendered judgment which, in regard to this cause of action, ordered that the personal property of the common partnership be divided in proportion to the share of each joint owner; that the urban properties be sold at auction to the highest bidder and the proceeds be distributed proportionally among the owners; that the rural properties be divided among the joint owners by "awarding

to each of them a parcel of land in each property in proportion to his condominium,'' and ordering the appointment of three arbitrators, one by each party and the third to be appointed by the court, to make the division and submit a report to the court for approval. Judgment was likewise rendered on the second cause of action which is not involved in this appeal.

In the present appeal we have to consider first a motion to dismiss filed by the plaintiff-appellee. This motion has been discussed fully and very ably by both parties, who have filed briefs showing profound study of the matter. But we believe that the question at issue does not involve serious difficulties.

The motion is based on the following:

(a) Notice of the judgment was given to the attorney for the defendants on October 25, 1924, and he appealed on November 22, 1924, or 29 days after being notified.

(b) That according to subdivision 3 of section 295 of the Code of Civil Procedure, an appeal from an interlocutory judgment in an action for partition of real property should be taken within ten days after the judgment is rendered and docketed.

(c) The judgment in this case, although final as to the claim for salary and amounts, is only interlocutory as regards the division of the properties, inasmuch as in order to carry the division into effect it is necessary to appoint arbitrators and that they make and submit a report, after which final judgment will be rendered by the court.

In the form in which the complaint states the problem before the court the question is only whether or not the court can order a division of the property as a logical consequence of the dissolution of the partnership. The plaintiff has prayed the court for the division of the rural properties, the sale of the urban properties and a division of the proceeds, the division and allotment of the personal property and the appointment of arbitrators to make the division

of the rural properties. Of course, his position for contending now that the appointment of arbitrators and their intervention prevents the belief that the judgment is final is not impregnable. The plaintiff prayed for judgment to that effect and it can not be supposed that he had any other purpose than to secure a final determination. We may say that neither that prayer of the complaint nor the granting of it by the judgment is absolutely necessary, although not redundant. But that is a means for the execution of the judgment and may be moved for and granted after the judgment becomes final. It is not an indispensable part of the determination of the case, but is necessary for the execution of the judgment.

From a study and comparison of the prayers of the complaint and of the answer it very clearly appears that the point in controversy is no other than the division of the rural properties as prayed for by the plaintiff on the ground that they are divisible naturally, which is opposed by the defendants on the ground that they are not divisible, at least not all of them, and that if they were, the division would be difficult and would decrease the value of the property. Therefore, the issue was reduced to that question. The court held in effect that the properties were divisible and that the joint ownership could and should be dissolved, fixing in its judgment the manner and form of the division and the amount of the shares. Is it possible in law to go further judicially than the court went in that judgment? If one party contends for the divisibility and claims the right to terminate the partnership and the other contends for the opposite, the court, in deciding in favor of the legal theory of one of the parties, has determined finally and conclusively the rights of the parties to the action. The execution of the judgment will be effected by the intervention of the arbitrators, and that is not a judicial but a purely technical or ministerial act. The judgment so rendered meets the conditions and

has the elements prescribed by section 188 of the Code of Civil Procedure.

In this jurisdiction and in *Mazarredo* v. *García,* 31 P.R.R. 731, this court held as follows:

"An order striking out the amended complaint because it was substantially the same as the original complaint and imposing upon the plaintiffs the costs, expenses and counsel fees, following the form of a judgment, has the character of a final judgment."

The case of *Oronoz* v. *Román,* 26 P.R.R. 22, involved ownership in common whose extinction was sought by the plaintiff. The judgment was rendered on November 2, 1916, and appealed from on December 2, 1916. The termination of the joint ownership was adjudged and a public sale of the real property involved was ordered. In the course of the opinion this court said:

"A judgment, as defined by law, is a final determination of the rights of the parties in an action or proceeding. Sec. 188 of the Code of Civil Procedure. The secretary must keep with the records of the court a book to be called the 'Judgment Book,' in which judgments must be entered, says section 231 of the said code.

"In the present case the trial was had in open court and the case was submitted for decision. Later, the court rendered its judgment in writing, disposing definitely of the rights of the parties, and the secretary entered it in the judgment book. In our opinion the fact that the words 'Rendered in chambers' appeared in the judgment is not important."

The motion to dismiss the appeal must be overruled.

The appeal taken by the defendants is based on two assignments of error. The first refers to the imposition of costs upon the defendants and the second to the division of the rural properties in form of parcels and not in the form of public sale as prayed for by the defendants.

As to the imposition of the costs upon the defendants, the error in the judgment is manifest and evident.

The complaint contained two causes of action—one for the division of property held in common and the other for

the payment of services. In relation to the former the defendants have admitted and accepted the division of certain properties even as proposed in the complaint, and have opposed the division of others and prayed that they be sold and the proceeds divided, which in reality is a form of partition. The judgment is adverse to the plaintiff as to the payment for services, and in regard to the division it orders a sale of the shares of stock, the cattle and the urban properties and a division of the rural properties in the form of parcels and not their public sale. This is really the issue reached in the litigation.

The opposition to the division of the rural properties in the form prayed for in the complaint has a basis in the interpretation of the law. It is not a whimsical, indefensible and unreasonable opposition. As all such matters, it is debatable in different and even antagonistic aspects. Logically speaking, it can not be said that there has been temerity on the part of the defendants. Rather might it be said that there was temerity on the part of the plaintiff in bringing an action to recover for services.

If bad faith or temerity on the part of a litigant can not be sustained except when there is no justification for his action or defense (*Martínez* v. *Padilla,* 19 P.R.R. 555); if the declaration of temerity is based on the lack of reason of a party to sustain his action or defense (*Vivas* v. *Hernaiz, Targa & Co.,* 24 P.R.R. 779); if when an examination of the main question in a case leads to the conclusion that the questions of law and of fact were entirely debatable and one party should not be mulcted in costs (*Nevares* v. *Nevares Bros.,* 37 P.R.R. 796), the costs in this case should not have been imposed upon the defendants. In this particular the error is manifest.

The second assignment of error requires more careful consideration. So many questions have been raised and so many authorities have been cited that some important point might be overlooked.

Among the properties described as subject to division are the following:

1. The San Antón plantation of 113 acres of sugar cane, pasture and forest land containing four frame houses, an irrigation pump, ten wells with pipes, a derrick, a railway siding, an overseer's house and a dwelling house. The complaint only mentions the four houses, but the existence of the other houses, siding, etc., appears also. If we are not mistaken, the pump is mentioned separately in the complaint.

2. A parcel of one acre and a fraction and another of one-fourth of an acre.

3. The sugar-cane plantation called Constancia of 994.33 acres of land partly planted in cane, partly used for pasture and partly taken up by the yard and alleys, a river dam, water-ways, water rights, dwelling houses, huts, machinery building, warehouse, other houses, pump, etc. It is situated in the municipal district of Ponce.

In regard to these properties the defendants contend that they are not divisible by their nature and that their division would result prejudicial to the joint owners.

A first reason alleged by the defendants is that as it is a matter of a single agricultural undertaking which requires some land suitable for cane and some for pasture, its division among four joint owners into different proportions and not into four parcels, but many more, taking into account the topography of the land, would cause great depreciation of the properties involved.

We do not agree with this argument. Section 408 of the Civil Code provides that joint owners can not exact a division of property held in common when the result would render it unserviceable for the use for which it was intended. Clearly, there is a conflict, fundamentally and philosophically in law, between the freedom of the joint owner to withdraw from the partnership and the prejudice that may result to the joint owners by the division of the property held in common. And that conflict has been adjusted by the law in

the sense of respecting the freedom of those who do not wish to remain in the partnership and desire to own their property in a more tangible and perfect manner. It is only when the thing held in common is destroyed by being rendered unserviceable that the right of the joint owner is curtailed and annulled; but not when the division simply renders less valuable or depreciates the property.

What we have just said is not in conflict with sections 413 and 1029 of the Code, but rather seems to confirm and corroborate them. We hold that to a division between joint owners may be applied the rules for the partition of an inheritance, if there is no fundamental conflict between the two institutions. Thus an adjudication with compensation for excess may be prayed for and obtained, or a public sale, as the case may be. But this, which may be a manner of supplying the material division, or of substituting the material value by the market value, the actual value of the portion or share in the thing which had been held in common, is not a declaratory rule of indivisibility, but simply a circumstantial and expedient rule. Section 1029 of the Civil Code contains two conditions—the indivisibility of the thing and its impairment by the division. The former fundamental and absolute and the latter expedient, relative and circumstantial.

The implication drawn by the learned attorneys for the defendants is extreme, goes too far. In their brief they say:

"So that a thing is not only legally indivisible when it becomes unserviceable for the use for which it is intended, but also when it becomes greatly impaired by its division."

This is neither the spirit nor the letter of the law. There is a great difference between the indivisible nature of the thing and the possible loss of value as a consequence of the division.

The judgment of the Supreme Court of Spain of June 14, 1895, is cited as follows:

"In order to decide on the divisibility of a thing held in common we must consider first the nature of the property; and if by reason of the division a considerable expenditure is imposed on the joint owners and the profit therefrom is less than when worked in common ownership, thus diminishing in value, it should not be divided."

We have examined the judgment referred to by the appellants and find that that case involved an urban property whose division required important and costly work and of itself caused a diminution in value as well as a reduction in rent as the result. The judgment of the court ordered that the property be sold by public auction and the appellate court affirmed the judgment of the lower court. The Supreme Court dismissed the appeal from the judgment of the appellate court. The first ground of the judgment is stated as follows:

"Whereas the judgment does not violate articles 401 and 404 of the Civil Code cited in the first ground of the appeal, for although the house in question, as is usually the case with all corporeal property, is materially divisible, it is not so by its nature, since a division would impose a great expenditure on the joint owners, the two resultant houses would be left impaired as to their solidity and the income therefrom would be less than that now received by their owners and therefore their value reduced, which circumstances justify the court which renders this decision in holding that the house in question is indivisible essentially and by nature."

With due respect to the authority invoked, perhaps we may not agree with all of the reasonings of the Supreme Court of Spain. In the first place, because the concept of indivisibility appears somewhat vague and it is more than probable that in the concept accepted by the judgment, causes of a purely juridical nature have been confused with circumstantial and expedient ones. Thus the fact of a decrease in the rent or income does not seem to us to have anything at all to do with the juridical concept of divisibility, because the income or rent depends on a great many unstable circum-

stances. Nor can the fact of the expenditure entailed by the division be an absolute element.

We do find a difference between the idea of material divisibility which pertains to all corporeal things and that of legal divisibility which must be taken into account in connection with the circumstances. A thing might be susceptible of material division, but if the things resulting from the division become valueless or *considerably* impaired (Sec. 1029 of the Civil Code), or when the division renders the thing unserviceable for the use for which it was intended (Sec. 408 of the Civil Code), then it is not possible to divide *legally* a thing which *materially* could be divided. The obstacle is not the nature of the thing, but the provision of the law. Even then the freedom of the joint owner to withdraw from the partnership in common is not reduced or restrained because the law provides the solution consisting in the substitution of the division of the thing itself by the division of the proceeds of its sale.

We have no doubt that many of the rules for the division or partition of inheritance, those which have reference to the manner of making the division, are applicable to the division of property held in common. This is the idea of section 413 of the Civil Code.

Going more deeply into these provisions, we see that there are cases in which the joint owners are restrained from demanding the division as appears from section 408 of the Civil Code. We think that the text refers to the material division of the thing, and we are confirmed in that belief by the contents of section 411 of the Code reading as follows:

"When the thing held in common is essentially indivisible, and the part-owners cannot agree that it be adjudged to one of them, he indemnifying the others, then it shall be sold and the proceeds distributed."

The two sections supplement each other and at the same

time safeguard the right of a person not to remain a joint owner and overcome the obstacle preventing the division owing to the undivisible nature of the thing held in common.

That the rural properties in this case are divisible is a problem which can have more than one solution. Lands can be divided regardless of the kind of exploitation and the nature of the soil, for in breaking them up into lots in order to equalize their value it would be necessary to establish compensations which can not be avoided. But in the present case there are also properties made up of plantations which are connected therewith and by reason thereof have a certain value and from their own nature are indivisible, such as the irrigation pump which in connection with and by reason of the plantations is worth more than $15,000, and by itself is worth perhaps not more than twenty percent of the cost price, apart from the fact that it is not divisible. That pump, as well as the siding, the houses, etc., were built on the plantations by the will of the joint owners and form a part of the property from which they can not be detached without serious detriment; they occupy a part of the land which could not be divided without destroying their value, and are in themselves and by reason of such circumstances materially indivisible. In our opinion the water rights and dams for irrigation purposes are also indivisible.

It is unnecessary to go into grounds of secondary importance, like the practicability of the division, etc. What must be borne in mind is the nature of the property, the loss of value by reason of the division, and whether a substitution is possible for the material division.

In *Oronoz* v. *Román,* 26 P.R.R. 22, this court held the existence of a common ownership of property which had to be divided. It appeared that the property owned in common had a very narrow frontage on the public road and could not be divided so as to give egress to both portions, and a public sale of the property and distribution of the proceeds thereof among the joint owners was adjudged. This is the

form of division that could and should have governed in the present case.

Therefore, the district court committed error in ordering the material division into parcels of the rural properties here involved.

The judgment appealed from is reversed in part and another rendered ordering the public sale of the rural properties involved in the present case and of their appurtenances and a division of the proceeds of the sale among the joint owners in proportion to their respective shares, without special imposition of costs, and otherwise affirmed.

Mr. Justice Wolf dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF

Ordinarily, under sections 413 and 1018 *et seq.* of the Civil Code, heirs or owners in common have a right to insist upon the material division of a particular piece or pieces of property. It may be that a man has an established business or even a sentimental desire not to be prevented from enjoying at least a part of the ancestral estate. The evidence in the case partially convinced me that it would perhaps be better financially for the property to be sold, but I was not at all persuaded that the extensive acreage in this case could not be divided in kind between three or four owners in common, even though material improvements had been made upon certain sections thereof. By various compensating devices, even down to cash payments, an heir receiving more of the improvements or of the land than the others could make up the differences. I was not even convinced that any money payment would be necessary to make such a material division. It is unnecessary, therefore, for me to consider whether compensation could be made by apportioning the pumps or irrigation devices.